**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| INSIDER SOFTWARE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ID DESIGNS, INC., an Oklahoma corporation; and KLAJD DEDA, an individual,<br><br>Defendants. | Case No. 20-cv-05990-BLF<br><br>**ORDER GRANTING IN PART PLAINTIFF'S *EX PARTE* MOTION FOR TRO AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE; AND SETTING HEARING ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>[Re: ECF 5] |

Plaintiff Insider Software, Inc. ("Insider") filed the complaint in this action on August 25, 2020, asserting claims against Defendants ID Designs, Inc. ("ID Designs") and Klajd Deda ("Deda") for misappropriation of trade secrets under federal and state law, and a number of related claims. *See* Compl., ECF 1. Simultaneously with filing the complaint, Insider filed an *ex parte* motion seeking a temporary restraining order ("TRO") and an order to show cause why a preliminary injunction should not issue. *See* Ex Parte Mot., ECF 5. The Court held a telephonic hearing on the *ex parte* motion on August 28, 2020, at which Insider's counsel appeared.

As set forth below, Insider's *ex parte* motion is GRANTED IN PART. Defendants are HEREBY ORDERED TO SHOW CAUSE, in writing and on or before September 4, 2020, why the preliminary injunction requested by Insider should not issue. Insider may file a reply on or before September 9, 2020 at 10:00 a.m. A hearing on Insider's motion for a preliminary injunction is set for September 14, 2020 at 10:00 a.m.

## I. BACKGROUND

Insider has submitted the declaration of its Chief Executive Officer, Bruce Mitchell, which establishes the following facts. *See generally* Mitchell Decl., ECF 5-3. Insider provides font-management software and subscription services. *Id.* ¶ 3, ECF 5-3. Its FontAgent family of products assist customers in managing fonts on Mac, Windows, and Linus operating systems. *Id.* Insider's products can be installed locally on customer computers, or customers can use the products on a subscription basis through Insider's cloud-based data center, the FontAgent CloudServer. *Id.*

For several years, Insider has contracted with ID Designs, a company run by Insider's former Vice President of Engineering, Deda, to assist in designing, developing, improving, and maintaining Insider's FontAgent products. Mitchell Decl. ¶ 6. Deda and his wife are the only employees of ID Designs, and Deda is the only employee responsible for compute programming and engineering services. *Id.* Under the parties' Master Services Agreement, Insider agreed to pay Defendants 30% of its revenues on the products that ID Designs helped develop. *Id.* Defendants agreed to relinquish all right, title, and interest in the work performed for Insider, and to treat Insider's intellectual property in strict confidence. *Id.* ¶ 7. So that ID Designs and Deda could perform the agreed-upon work, Insider gave Defendants full access to its source code. *Id.* ¶ 8. Insider also made Defendants the "root" users for Insider's FontAgent CloudServer, meaning that Defendants had the login and password information for the "root" account, which gave them the ability to make unrestricted, system-wide changes to the FontAgent CloudServer. *Id.*

Over the years, Defendants sought to renegotiate the terms of the Master Services Agreement, requesting a larger share of revenues. Mitchell Decl. ¶¶ 9-10. Insider declined, taking the position that the work performed by Defendants was not worth more than 30% of revenues, which according to Insider was already significantly above industry standards. *Id.* ¶ 10. In early 2020, Insider discovered that Defendants had moved Insider's FontAgent CloudServer from Assembla, the cloud-based source code management service where it had been stored, without Insider's knowledge or permission. *Id.* ¶ 11. Defendants are storing Insider's FontAgent CloudServer on GitHub, another cloud-based source code management service, and/or on

2

Defendants' personal computers. *Id.* ¶ 12. Defendants also have taken copies of Insider's source code, object code, build libraries, and other code. *Id.* ¶ 13. Insider has asked Defendants on several occasions to grant Insider administrative access to its FontAgent CloudServer on GitHub, and to return all of its source code and other intellectual property. *Id.* ¶¶ 14-16. Defendants have refused. *Id.*

On June 25, 2020, Insider's counsel notified Defendants of termination of the Master Services Agreement. Mitchell Decl. ¶ 17. Counsel made several demands on Defendants for return of Insider's source code and access to its FontAgent CloudServer. *Id.* ¶¶ 17-19. Defendants have ignored or refused those demands, claiming that the code belongs to them and that they were willing to make a deal for the code's return. *Id.* In August 2020, Defendants threatened to offer their coding services to other companies in the same sector, which Insider understands to be a threat to sell or otherwise use its proprietary software for Defendants' gain. *Id.* ¶ 19. Defendants also stated that they considered termination of the Master Services Agreement to be "official notice to stop our service and revoke the cloud server" on September 5, 2020. *Id.* Insider understands that to be a threat to deactivate Insider's FontAgent CloudServer. *Id.* Deactivation of the FontAgent CloudServer would devastate Insider's business by interrupting its customers' ability to use its products. *Id.* When users run FontAgent software, the software periodically contacts the FontAgent CloudServer to confirm the user license. *Id.* ¶ 22. If the software cannot contact the FontAgent CloudServer, the user will experience a number of popups and then the software will stop functioning within thirty days. *Id.* Moreover, without access to its own intellectual property on the FontAgent CloudServer, Insider will be unable to meet commitments to large customers regarding addition of certain features and functionality by this Fall. *Id.* ¶ 23.

## II.  LEGAL STANDARD

The Court may issue a TRO without notice to the adverse party only if: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why

1   it should not be required." Fed. R. Civ. P. 65(b)(1).  In addition, this district's Civil Local Rules
2   require that "[u]nless relieved by order of a Judge for good cause shown, on or before the day of
3   an *ex parte* motion for a temporary restraining order, counsel applying for the temporary
4   restraining order must deliver notice of such motion to opposing counsel or party." Civ. L.R. 65-
5   1(b).
6         The standard for issuing a temporary restraining order is identical to the standard for
7   issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d
8   832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp.
9   1320, 1323 (N.D. Cal. 1995).  An injunction is a matter of equitable discretion and is "an
10  extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled
11  to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).  A
12  plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the
13  merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that
14  the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at
15  20.  "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser
16  showing than likelihood of success on the merits – then a preliminary injunction may still issue if
17  the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are
18  satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal
19  quotation marks and citations omitted).

20  **III.   DISCUSSION**

21        The Court has no difficulty finding that Insider has satisfied the requirements for issuance
22  of a TRO *ex parte*, that a TRO is appropriate in this case, and that no security is warranted.  As
23  discussed at the hearing, it is the Court's view that the scope of injunctive relief requested by
24  Insider is too broad at this stage of the proceedings.  Accordingly, while the Court will grant
25  Insider's motion for a TRO, it will limit the relief granted at this time without prejudice to Insider
26  seeking greater relief on its motion for a preliminary injunction.

27      **A.   Notice**

28        The declaration of Bruce Mitchell, summarized above, establishes that Defendants have

moved Insider's FontAgent CloudServer without Insider's permission, cut off Insider's access to its own intellectual property, threatened to use Insider's intellectual property for their own financial gain, and threatened to disable the FontAgent CloudServer on September 5, 2020. These facts demonstrate that Insider will suffer immediate and irreparable injury unless relief is granted quickly, before service of process of the complaint is effected and before full briefing could be obtained. Insider did provide notice of this motion to Defendants via email on August 25, 2020. *See* Certificate Re Notice, ECF 5-4. However, it is not clear whether Defendants received the email notice, as they have not responded to the motion. Under these circumstances, the Court finds that Insider has shown the requisite good cause to proceed on their motion *ex parte*.

### B. Analysis

#### 1. Likelihood of Success on the Merits

The Court begins its analysis by considering Insider's showing on the first *Winter* factor, likelihood of success on the merits. Insider's motion for TRO is based primarily on its claims for misappropriation of trade secrets under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836, and the California Uniform Trade Secrets Act ("CUTSA"), Civil Code § 3426 *et seq*. "The contours of the claims are essentially identical. An aggrieved plaintiff must plead and prove three elements: (1) plaintiff owned a trade secret; (2) defendant acquired, disclosed, or used the protected secret through improper means; and (3) defendant caused damage to plaintiff." *Beatport v. SoundCloud*, No. CV 19-847 MRW, 2019 WL 6330680, at *1 (C.D. Cal. Apr. 11, 2019). "Actual or threatened misappropriation may be enjoined." *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*, No. 2:13-CV-00784-MCE, 2013 WL 2151553, at *9 (E.D. Cal. May 16, 2013).

As discussed above, Insider has presented evidence, through the declaration of Bruce Mitchell, that Defendants have taken control of Insider's FontAgent CloudServer, refused Insider's requests for access to it, and threatened to disable the FontAgent CloudServer on September 5, 2020. *See* Mitchell Decl., ECF 5-2. Mitchell's declaration is bolstered by the declaration of Insider's counsel, Thomas McInerney, who attaches correspondence between himself and Defendants supporting Insider's claims. *See* McInerney Decl., ECF 5-3. This evidence is sufficient to establish that Insider is likely to succeed on its trade secrets claims.

5

### 2. Irreparable Harm

Insider also has established that it is likely to suffer irreparable harm if a TRO is not granted. Insider's CEO, Mitchell, explains at length in his declaration that Defendants' threatened deactivation of the FontAgent CloudServer would devastate Insider's business by interrupting its customers' ability to use its products. Mitchell Decl. ¶ 21. Such deactivation would cause Insider's products to stop working for existing customers. *Id.* ¶ 22. Moreover, without access to its own intellectual property on the FontAgent CloudServer, Insider will be unable to meet commitments to large customers regarding addition of certain features and functionality by this Fall. *Id.* ¶ 23.

### 3. Balance of Equities

The balance of equities favors Insider's motion for TRO. Based on the record evidence, it appears that Defendants in effect have taken Insider's intellectual property hostage to extort more than the 30% of revenues agreed upon in the parties' Master Services Agreement. There does not appear to be any basis under the terms of that agreement or otherwise for Defendants to claim ownership of the intellectual property in question or to prevent Insider's access to it.

### 4. Public Interest

Finally, the public interest favors issuance of a TRO. If Defendants disable the FontAgent CloudServer, all existing users of Insider's FontAgent products will lose access to the products' functionality within thirty days. Mitchell Decl. ¶ 22.

## C. Security

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted) (italics in original). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her

6

conduct." *Id.*

Nothing in this record suggests that Defendants will be prejudiced by an injunction prohibiting them from disabling Insider's FontAgent CloudServer or restoring Insider's access to its own intellectual property. Accordingly, the Court finds it appropriate to issue injunctive relief without requiring Insider to provide security.

**D.     Scope of Injunctive Relief**

Insider's motion for TRO seeks both prohibitory and mandatory injunctive relief. For the reasons discussed above, the Court is satisfied that Insider is entitled to prohibitory injunctive relief, including an order enjoining Defendants from disabling, deactivating, or destroying the FontAgent CloudServer, and enjoining Defendants from using or disclosing any of the materials developed by Defendants for Insider.

At the hearing, the Court expressed reservations about granting mandatory injunctive relief, noting that such relief requires a greater showing and that Insider had not addressed that requirement in its briefing. "In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (internal quotation marks and citation omitted). Applying this standard, the Ninth Circuit has held that a plaintiff seeking a mandatory injunction must establish that "the law and facts clearly favor her position, not simply that she is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasis in original). Insider's counsel acknowledged that Insider's motion does not expressly address the greater standard for mandatory injunctive relief, but she argued that such relief is warranted given that Defendants are threatening to destroy, and blocking access to, Insider's own intellectual property. The Court asked for clarification regarding Insider's ownership of the FontAgent CloudServer.

Insider has addressed the Court's concerns by filing a Supplemental Declaration of Bruce Mitchell. *See* Suppl. Mitchell Decl., ECF 13. Mitchell states that the FontAgent CloudServer is Insider's cloud-based software product that it sells as a subscription service to its large enterprise

1  customers; Insider uses the server to check the licenses on other FontAgent software sold to
2  customers; Insider purchased the server equipment to operate the FontAgent CloudServer; and
3  Insider pays the monthly fees to house and run the server equipment. *See id.* ¶¶ 3-6. Insider also
4  has filed a revised proposed temporary restraining order consistent with the Court's comments at
5  the hearing indicating that it would be willing to issue a limited mandatory injunction requiring
6  Defendants to grant Insider access to the intellectual property upon a showing of Insider's
7  ownership of the FontAgent CloudServer, but would be reluctant to grant the more extensive
8  mandatory injunctive relief requested by Insider, such as requiring Defendants to return all code
9  developed by Defendants. The Court is satisfied that the revised proposed order submitted by
10 Insider specifies prohibitory and mandatory injunctive relief that is well-supported by the record
11 evidence.

### E. Date of Hearing on Motion for Preliminary Injunction

A TRO issued without notice "expires at the time after entry – not to exceed 14 days – that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension." Fed. R. Civ. P. 65(b)(2). "The reasons for an extension must be entered in the record." *Id.*

In the present case, the Court proposed that the hearing on the motion for a preliminary injunction be set on September 11, 2020, which would be fourteen days after issuance of the TRO. However, Insider's counsel requested that the hearing be deferred until the following week due to the unavailability of Insider's lead counsel on September 11, 2020. The Court finds that the unavailability of lead counsel constitutes good cause for extending the TRO beyond the initial fourteen-day period. The Court therefore orders that the TRO shall be in effect for twenty-eight days, until September 25, 2020, or until the Court issues an order on the motion for a preliminary injunction, whichever date is earlier. The extension of the TRO for an additional fourteen days will permit Insider's lead counsel to argue the motion and will afford the Court an opportunity to fully consider Defendant's response and issue a reasoned disposition.

//
//

## IV. ORDER

(1) Insider's *ex parte* motion for a TRO is GRANTED IN PART. The scope of the injunctive relief granted by the Court is set forth fully in the Temporary Restraining Order issued simultaneously with this order;

(2) Defendants are HEREBY ORDERED TO SHOW CAUSE, in writing and on or before September 4, 2020, why the preliminary injunction requested by Insider should not issue.

(3) Insider may file a reply on or before September 9, 2020 at 10:00 a.m.

(4) A hearing on Insider's motion for a preliminary injunction is set for September 14, 2020 at 10:00 a.m.

Dated: August 28, 2020

_____
BETH LABSON FREEMAN
United States District Judge